Argued and submitted September 23, 1998, affirmed March 17, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## PAUL IMMANUEL OWENS,
*Appellant.*

(96-08-44060; CA A96818)

979 P2d 284

Kimi Nam, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Daniel Rives Kistler, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warren, Senior Judge.

EDMONDS, P. J.

Armstrong, J., dissenting.

### EDMONDS, P. J.

Defendant appeals from his conviction for resisting arrest, ORS 162.315.[1] He assigns as error the denial of his motion for a judgment of acquittal and the failure to give his requested jury instruction. We affirm.

The jury could have found the following facts from the evidence. On June 9, 1996, Officer Rabey of the City of Portland Police Department responded to a call from the area of the Saturday Market in downtown Portland. When Rabey arrived, a security guard told her that defendant was trespassing on the New Market Theater property. Rabey approached defendant and asked for his name and address, so that she could issue a citation. Defendant refused to cooperate with Rabey and did not give her the information that she had requested. She told him that if he reentered the property, she would arrest him. Defendant said, "fine, go ahead and arrest me," and reentered the property. Rabey told defendant to turn around and to place his hands on his head. Defendant refused, and when Rabey attempted to grab his arm, he wrenched it away. Defendant then swung his camera bag at Rabey and walked away. Because Rabey did not want to attempt to arrest defendant again alone, she called for backup.

---

[1] ORS 162.315 provides:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer in making an arrest.

"(2) As used in this section:

"(a) 'Arrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process.

"(b) 'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody.

"(3) It is no defense to a prosecution under this section that the peace officer lacked legal authority to make the arrest or book the person, provided the peace officer was acting under color of official authority.

"(4) Resisting arrest is a Class A misdemeanor."

Two mounted police officers, Pool and Marshman, responded to Rabey's call and stopped defendant in the food court area in the Market. Rabey went to that area and saw defendant standing between the officers' two horses. Rabey came up behind defendant and told the mounted officers that he was the person who was to be arrested. She grabbed defendant's arm, but he immediately tore away and began yelling. When Rabey attempted to handcuff defendant's right wrist, he lifted his left arm as if to strike her. Pool and Marshman also grabbed defendant's arms, but he continued to struggle. With Pool and Marshman holding defendant's arms, Rabey handcuffed defendant and led him out of the area. However, he remained combative, pulling away, fighting, and crying out for help.

Defendant was charged with one count of resisting arrest, which alleged that he:

> "[O]n or about June 9, 1996, in the County of Multnomah, State of Oregon, did unlawfully and intentionally resist Officers Michael Marshman, David Pool, and Stephanie Rabey, persons known by the said defendant to be peace officers, in making an arrest, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

After the close of the evidence at trial, defendant moved for a judgment of acquittal on the ground that the state had not offered evidence that he had used or threatened to use violence, physical force or any other means that created a substantial risk of physical injury. In light of the above evidence, the trial court correctly denied defendant's motion. Defendant's resistance on both occasions created a substantial risk of physical injury to the officers.

Before the case was submitted to the jury, defendant requested the following jury instruction:

> "In order to find the defendant guilty of resisting arrest, all six jurors must find the defendant guilty of resisting the same officer within the same incident."

He contended to the trial court,

"I still believe that it's the court's intent, that all jurors agree on one victim, whether or not the victim is misidentified in the pleading. In other words, three jurors could agree on John Smith as the victim, three jurors could agree on John Doe as the victim—and neither one of them would be unanimous on a victim, a crime."

The trial court refused to give the requested instruction, ruling:

"I've ultimately concluded that it is not necessary for the jury to agree that the same police officer was resisted. Let me tell you why I've concluded that. I also say that I recognize that I could be wrong in my analysis, but when I thought it through, I concluded that an individual who, for example, resisted the efforts of, let's assume for the moment, twenty police officers to arrest that individual could not in fairness be convicted of twenty counts of resisting arrest. I believe that that person could be convicted only of one count of resisting arrest. It is the arrest which is being resisted. And I note that the resist arrest statute is pled in such a way that the person who is accused must intentionally resist a person known to be a peace officer.

"* * * * *

"I conclude * * * that the intent in a resist[ing] arrest case is that the person who is accused be convicted of only one arrest, I mean of only one charge of resist[ing] arrest, regardless of the number of officers involved in effectuating that arrest. Therefore, I have concluded that, although the jurors may differ in their view as to which of the officers were threatened with the use of violence or were actually were subjected to violence, nevertheless, they could conclude, I believe, that the individual accused did resist the arrest."

■   On appeal, defendant argues that the trial court erred when it failed to give his requested instruction. It is not error for a trial court to refuse to give a requested instruction that is incorrect in some respect in the terms in which it is proposed. *State v. Francis*, 284 Or 621, 626, 588 P2d 611 (1978). Defendant's requested instruction must be understood in the context of his argument in support of it. The argument assumes that the offense of resisting arrest could have been committed by resistance to Rabey when she first

attempted to place him under arrest and/or by his resistance to each individual police officer during the second incident. His assertion that there could be four offenses arising out of those events is incorrect.

In *State v. Crane*, 46 Or App 547, 612 P2d 735 (1980), *disapproved of on different grounds by State v. Wright*, 310 Or 430, 799 P2d 642 (1990), we explained that ORS 162.315 contemplates two culpability elements and two variable elements. The culpability elements are that: (1) The actor's conduct must be intentional, and (2) the conduct must be accompanied by knowledge that the person resisted is a peace officer. ORS 162.315(1). The variable elements involved in resisting an arrest are: (1) The degree of resistance, ORS 162.315(2)(b), and (2) the legality or illegality of the arrest, ORS 162.315(3). Those elements do not focus on the number of the officers that are resisted but on the civil disorder and disrespect for the law that is threatened by the actor's conduct. Under the statute, an individual's right to bodily security must be balanced against the interest in public order. The Commentary to the Proposed Oregon Criminal Code notes that the adoption of ORS 162.315 was intended to achieve a balance of these conflicting interests by addressing the "threat to society posed by violent street confrontations between private citizens and the police." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report (July 1990), § 206.[2]

The understanding that ORS 162.315 does not focus on the potential of harm to the individual officers attempting to make the arrest, but rather on the threat to civil order, is further supported by ORS 163.208. That statute provides, in part:

---

[2] We reject the notion offered by the dissent that the use of the word "the" in the part of the statute that defines the word "resists" unambiguously indicates the legislature's intent to make the statute "a crime against a particular officer" rather than a crime against public order. The commentary indicates otherwise. *See Steelman-Duff, Inc. v. Dept. of Transportation*, 323 Or 220, 227-31, 915 P2d 958 (1996) (noting the use of the indefinite article "a" rather than the definite article "the" in the disputed statute but holding, after reviewing the remaining text and context, that the intent of the legislature was not clear and turning to the next level of scrutiny for statutory construction).

"(1) A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer, corrections officer, youth corrections officer, parole and probation officer, emergency medical technician or firefighter, and while the other person is acting in the course of official duty."

Thus, the legislature has provided in ORS 163.208 for the occasion when an individual officer is injured while attempting to make an arrest.

■ The requested jury instruction would have required the jury to find defendant guilty "of resisting the same officer." Although it is correct that under the holdings of *State v. King*, 316 Or 437, 441-42, 446, 852 P2d 190 (1993), and *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), all jurors must agree on all of the elements of the offense, that is not the argument underlying defendant's requested instruction or the argument that he made to the trial court. The vice of defendant's argument and the requested instruction is that they would have required the jury to test the acts of defendant in light of the harm to each of the individual officers involved in the arrests. That would have been an improper focus. Under the facts of this case, there could have been only two offenses of resisting arrest committed; *i.e.*, when Rabey first attempted to arrest defendant, and when Rabey, Marshman and Pool placed defendant under arrest. Defendant committed only one act of resisting arrest when he resisted the three officers, who were acting in concert to take him into custody. Thus, if any one of the three officers who were attempting to arrest him was put in substantial risk of personal injury by defendant's actions, and six jurors agreed on that fact even though they did not agree on which officer, that element of the statute would have been satisfied. Because the requested jury instruction required the jury to find defendant guilty of resisting the same individual officer, it could have misled the jury. Accordingly, the trial court was not required to give it.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that resisting arrest is a crime against public order and, therefore, the identity of the police officer who is resisted is not an element of the crime. 159 Or App at 86. Because I believe that that conclusion ignores the plain language of the resisting arrest statute, I disagree.

The issue is whether a person commits multiple acts of resisting arrest, under ORS 162.315, when the person resists arrest by two or more peace officers. In order to determine the answer, I look to the text of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). At the time of defendant's arrest, ORS 162.315 provided:

> "(1)   A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer in making an arrest.

> "(2)   'Resists,' as used in this section, means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to the arresting officer. Passive resistance does not constitute behavior intended to prevent being taken into custody.

> "(3)   It is no defense to a prosecution under this section that the peace officer lacked legal authority to make the arrest, provided the peace officer was acting under color of official authority.

> "(4)   Resisting arrest is a Class A misdemeanor."[1]

Under subsection (2) of the statute, a person resists arrest if that person uses or threatens use of "violence, physical force or any other means that creates a substantial risk of

---

[1] The legislature amended ORS 162.315 in 1997. Or Laws 1997, ch 749, § 3. The 1997 amendments are not relevant to this case. Defendant does not dispute that there was sufficient evidence presented to prove that he had "resisted" arrest as that term is used in the statute.

physical injury to any person and includes behavior clearly intended to prevent being taken into custody by overcoming the actions of *the arresting officer*." (Emphasis added.) The legislature's use of the definite article "the" indicates that the identity of the officer resisted is a factual element of the offense. In an incident where only one officer is attempting to make an arrest, it is simple to determine whether an arrestee's acts were for the purpose of overcoming the actions of the arresting officer and thus avoiding custody. Where three officers are involved, however, and the arrestee is struggling against all three, there may be some question as to whether the arrestee is attempting to avoid being taken into custody by all three officers or only by a particular officer.[2]

For example, it is foreseeable that an arrestee might mistrust one of the three officers and not want to be in that officer's custody and, therefore, struggle against arrest by that officer but not by the other two. In other instances, the arrestee might, indeed, struggle against all three. In either case, the struggle against each arresting officer would constitute a separate incident of resisting arrest for which the arrestee potentially might be charged. In each case, the factual elements are different.

In *State v. Houston*, 147 Or App 285, 935 P2d 1242 (1997), we held that, when a defendant has been charged with a single offense that could have occurred on more than one occasion, the jury must agree on a single occasion in which all of the factual elements constituting the crime were present. *Houston*, in turn, was based on the Supreme Court's decision in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), in which the court held that the jury must agree on the statutorily defined factual circumstances that constitute the crime of aggravated murder.[3] Defendant's first encounter with Rabey constituted one incident in which the elements of the

---

[2] The majority states that its conclusion that ORS 162.315 does not focus on the potential of harm to an individual officer is supported by the fact that another statute, ORS 163.208, addresses that problem. 159 Or App at 85-86. That statute, however, applies only when an officer is physically injured and, therefore, its existence does not support the majority's reading of ORS 162.315.

[3] The Supreme Court later held that the analysis developed in *Boots* was not limited to cases of aggravated murder. *State v. King*, 316 Or 437, 441, 852 P2d 190 (1993) (applying *Boots* analysis to DUII charge).

offense of resisting arrest may have been present, and his subsequent encounter with Pool, Marshman and Rabey constituted three additional incidents. Under *Houston* and *Boots*, the jury would have to agree on the specific set of factual elements proving the charge. In other words, the jury would have to agree as to which officer in which incident was resisted.

In this case, the state chose not to charge defendant with four separate counts of resisting arrest. Rather, the indictment simply stated that defendant had resisted all three officers. Defendant did not move to require the state to elect which incident formed the basis of the charge of resisting arrest, which would have been an appropriate course of action, but he did ask the court for an instruction requiring the jury to agree on the facts constituting the offense. Defendant's request was appropriate because, without the instruction, some of the jurors could have agreed that he had resisted arrest by Rabey in the first encounter but had not resisted any of the officers during the second encounter, while other jurors could have believed that defendant had not resisted Rabey during the first encounter but had resisted Pool, Marshman or Rabey during the second encounter. Because resistance against each officer during each encounter formed a separate basis for the offense, all the jurors were required to agree on a single incident involving a single officer. Accordingly, defendant's requested instruction was correct.

Moreover, because the jury was not required to "seriously [confront] the question whether they agree[d] that any factual requirement of [the offense had] been proved[,]" *Boots*, 308 Or at 375, and because the outcome might have been different if the instruction had been given, *Hernandez*, 327 Or at 106-07, the error was prejudicial to defendant. Accordingly, I would reverse the judgment of the trial court and remand the case for a new trial.