Submitted on remand from the Oregon Supreme Court February 19, conviction vacated; remanded with instructions June 9, petition for review denied September 28, 2004 (337 Or 476)

# STATE OF OREGON,
*Respondent,*

*v.*

# KAREN JEAN WATSON,
*Appellant.*

## CR00094B; A115328

91 P3d 765

Peter A. Ozanne, Executive Director, Office of Public Defense Services, and Susan F. Drake, Deputy Public Defender, for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Laura S. Anderson, Assistant Attorney General, for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Leeson, Judge pro tempore.

LEESON, J. pro tempore

## LEESON, J. pro tempore

Defendant appeals her conviction for first-degree theft.[1] ORS 164.055. We previously affirmed the conviction without opinion. *State v. Watson*, 190 Or App 305, 79 P3d 418 (2003). The Supreme Court thereafter vacated our decision and remanded for further consideration in light of *State v. Cox*, 336 Or 284, 82 P3d 619 (2003). *State v. Watson*, 336 Or 376, 84 P3d 1080 (2004). In light of *Cox*, we vacate the conviction and remand the case to the trial court to determine the relevant facts and to enter judgment accordingly.

Defendant and her husband engaged in a number of thefts at antique stores and malls in Washington and Oregon, including thefts from three locations in Yamhill County. They moved southward from one location to another, were finally noticed at an antique mall in Medford, fled further south, and were apprehended in California. The police recovered a large amount of stolen property, including many items that defendant and her husband had stolen before they arrived in Medford. Defendant was indicted in Jackson County on charges of aggravated theft, first-degree theft, and second-degree theft. The indictment for aggravated theft charged that, between September 23 and September 27, 1999, she committed theft in Jackson County "of miscellaneous property, of the total value of $10,000 or more, the property of others[.]" Defendant thereafter pleaded guilty to the charge of aggravated theft, and the court dismissed the remaining charges.

Defendant was subsequently indicted in Yamhill County for two counts of first-degree theft and two counts of second-degree theft. In the first count of first-degree theft, the indictment alleged that, "on or about the 21st day of September, 1999, in Yamhill County," defendant committed theft "of merchandise, of the value of $750 or more, the property of McMinnville Antique Mall, Granny's Touch and College Street Mall or its dealers[.]" The second count of first-degree theft separately alleged theft from Granny's Touch,

---

[1] The trial court merged an additional count of first-degree theft and two accounts of second-degree theft into the conviction for first-degree theft.

while the two counts of second-degree theft separately alleged theft from the other two businesses.

Defendant moved to dismiss the Yamhill County indictment on the ground that it constituted double jeopardy because the charges involved some of the same property that was the foundation for the Jackson County charges. After a hearing, the trial court concluded that the Jackson County indictment charged theft by receiving, while the Yamhill County indictment charged theft by taking, and that those were different crimes. It denied defendant's motion to dismiss on that ground. It made no finding as to whether the same property was involved in the two indictments, although it may have assumed that that was so. Defendant thereafter agreed to a stipulated facts trial, and the court found her guilty. It merged counts two, three, and four into count one at sentencing.

In *Cox*, the Supreme Court held that a defendant's separate acts of taking and receiving the same property constituted a single theft under ORS 164.015 and thus were a single aggravated theft under ORS 164.057. As a result, the defendant's prosecution for theft by taking in one county was for the same crime as his previous conviction for theft by receiving the stolen property in another; the second prosecution therefore violated ORS 131.515(1). 336 Or at 295. That holding directly applies here; under it, the basis for the trial court's decision was erroneous. The question that remains is whether defendant's conviction in Jackson County is for the same crime as the indictment in Yamhill County. The answer depends on whether the property that the Yamhill County indictment charges plaintiff with taking is included in the property that the Jackson County indictment charged her with receiving. Because the Jackson County indictment does not list the victims of the alleged theft or otherwise give details concerning the property, we cannot answer that question by simply examining the indictments. Whether the indictments in the two counties involved the same victims and the same property is a matter for the trial court to decide in the first instance.

Among the purposes of an indictment is to secure a defendant's right against former jeopardy by identifying the

crime so as to protect the defendant against further prosecution based on that crime. *State v. Crampton*, 176 Or App 62, 67, 31 P3d 430 (2001). However, Oregon courts do not require an indictment to charge the offense with great specificity, at least for relatively simple crimes such as theft. Rather, the courts rely on discovery to inform the defendant of the details of the alleged crime that are necessary to be able to defend against the charge. *See State v. Wright*, 167 Or App 297, 999 P2d 1220, *modified on other grounds on recons*, 169 Or App 78, 7 P3d 738, *rev den*, 331 Or 334 (2000). Thus, a defendant seeking to assert a former jeopardy bar to a second prosecution may have to go beyond the words of the charging instruments in order to prove that the crimes alleged are the same. Under ORS 135.470 and ORS 135.520, the defendant must raise the issue by a pretrial motion to dismiss, which the trial court decides as a matter of law. To decide such a motion, however, the trial court must necessarily resolve any factual issues, a role that the statute implicitly commits to it.

Deciding former jeopardy issues has always involved resolving factual questions. Before the adoption of ORS 135.470 in 1973, a defendant raised the issue by a plea of former judgment of conviction or acquittal, *former* ORS 135.820(3), *repealed* by Or Laws 1973, ch 836, § 358, and the jury decided the issue by a verdict, although the court could decide the issue as a matter of law if the facts were clear. *Former* ORS 136.620(2), *repealed* by Or Laws 1973, ch 836, § 242; *renumbered* as ORS 136.455; *see, e.g, State v. Magone*, 33 Or 570, 56 P 648 (1899). Although there do not appear to be any Oregon cases on point, federal courts, which followed a similar procedure, anticipated that a defendant might need to produce evidence to identify property or other details that an indictment described only in general terms. *See Dunbar v. United States*, 156 US 185, 191, 15 S Ct 325, 39 L Ed 390 (1895); *Koa Gora v. Territory of Hawaii*, 152 F2d 933, 935 (9th Cir), *cert den*, 328 US 62 (1946); *Capone v. United States*, 56 F2d 927, 933 (7th Cir 1932), *cert den*, 286 US 553 (1932).

In adopting ORS 135.470, the legislature transferred the factual decision from the jury to the court, but there is no indication that it intended to affect the parties' ability to introduce parol evidence when that evidence is necessary to make an incomplete written record complete. As a

practical matter, that means that the trial court, rather than a jury, must find any facts that are necessary to the legal decision, similarly to the way the court resolves factual issues in deciding motions to suppress and other pretrial matters. *See* ORS 133.673. An appellate court would be bound by the trial court's findings if there were evidence to support them, just as it is by trial court decisions on factual questions raised by motions to suppress and similar issues. *See, e.g., Lichau v. Baldwin,* 333 Or 350, 359, 39 P3d 851 (2002); *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

In this case, the question is whether the property involved in the Yamhill County indictment was also included in the Jackson County indictment. Again, that is a decision for the trial court to make in the first instance. We remand for it to do so, taking any additional evidence that it believes would be helpful to that decision.

Conviction vacated; remanded with instructions to determine whether property involved in Yamhill County indictment was also involved in Jackson County indictment; if same property was involved in both indictments the court shall dismiss the Yamhill County indictment; otherwise it shall reinstate the conviction.