Submitted March 16, reversed and remanded for entry of a single conviction for tampering with a witness and for resentencing, otherwise affirmed September 8, 2016, petition for review denied January 13, 2017 (360 Or 752)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TYRONE JOSEPH JENKINS,
*Defendant-Appellant.*

Lane County Circuit Court
201315241; A157028

383 P3d 395

Debra K. Vogt, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appeals Section, and Mary M. Reese, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Susan Yorke, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Flynn, Judge, and Haselton, Senior Judge.

## DUNCAN, P. J.

In this criminal case, defendant appeals the trial court's judgment of conviction and sentence, raising two assignments of error. In his first assignment of error, he asserts that the trial court erred by finding him mentally competent to proceed to trial. We reject that assignment without discussion. In his second assignment of error, he asserts that the trial court erred by failing to merge the guilty verdicts on four counts of tampering with a witness into a single conviction. The state concedes that the trial court erred by failing to merge the guilty verdicts. We have not previously addressed whether guilty verdicts on multiple counts of tampering with a witness merge under the anti-merger statute, ORS 161.067.[1] For the reasons explained below, we agree with the parties that when, as here, a defendant is found guilty of multiple counts of tampering with a witness based on a single act, the guilty verdicts merge under ORS 161.067, even though the counts involve different ways of violating the statute and different witnesses. Accordingly, we reverse and remand for entry of a single conviction for tampering with a witness and for resentencing, and we otherwise affirm.

The relevant facts are few and undisputed. Defendant was charged with multiple crimes, including crimes against his mother and brother. While defendant was in jail on those charges, the grand jury subpoenaed his mother and brother. Thereafter, defendant sent a letter to his mother, telling her that she should either not "show up to court" or "change [her] story," and that she should tell his brother "the same thing."

Based on the letter, the state charged defendant with four counts of tampering with a witness (Counts 6, 7, 8, and 9). Tampering with a witness is defined by ORS 162.285, which provides:

"(1)   A person commits the crime of tampering with a witness if:

"(a)   The person knowingly induces or attempts to induce a witness * * * in an official proceeding to offer false testimony or unlawfully withhold any testimony; or

---

[1] ORS 161.067 is set out below. 280 Or App at 695 n 3.

"(b)  The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned."

Counts 6 and 7 alleged that defendant committed witness tampering under section (a) of the statute by attempting to induce his mother and brother, respectively, to offer false testimony. And Counts 8 and 9 alleged that defendant committed witness tampering under section (b) of the statute by attempting to induce his mother and brother, respectively, to be absent from an official proceeding to which they had been summoned.

A jury found defendant guilty of the four witness tampering counts, among other crimes. At sentencing, defendant asserted that the guilty verdicts on the four counts should merge into a single conviction, submitting that the counts were simply "four different ways of committing the same offense" and that the case involved "[a] single letter [and a] continuous and uninterrupted act." The trial court stated that it would merge the guilty verdicts on Counts 6 and 8, which involved defendant's mother, and that it would do the same with the guilty verdicts on Counts 7 and 9, which involved defendant's brother, but that it would not merge all four guilty verdicts because there were "separate witnesses being tampered with." The judgment states that "the crime charged in Count 6 * * * merges with Count 8," and "the crime charged in Count 7 * * * merges with Count 9."[2]

On appeal, defendant argues that the trial court erred in failing to merge the guilty verdicts on all four of the witness tampering counts. Whether multiple guilty verdicts merge into a single conviction is a question of law, which we review for errors of law. *State v. Slatton*, 268 Or App 556, 558, 343 P3d 253 (2015).

Merger is governed by ORS 161.067, which precludes merger of guilty verdicts based on the same conduct or criminal episode in three circumstances, which are described in

---

[2] The judgment is not entirely clear. Although it states that Counts 6 and 8 merge and Counts 7 and 9 merge, it also states that defendant is convicted of all four counts, and it imposes sentences on Counts 6, 7, and 8, but not on Count 9.

three different subsections of the statute.[3] ORS 161.067(1) precludes merger when the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not; ORS 161.067(2) precludes merger when the same conduct or criminal episode violates only one statutory provision, but involves two or more victims; and ORS 161.067(3) precludes merger when the same conduct or criminal episode violates only one statutory provision and involves only one victim, but the violations are separated by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. This case does not involve any of those circumstances.

ORS 161.067(1) does not apply in this case because, although defendant was charged with violating two different paragraphs of the witness tampering statute—specifically, ORS 162.285(1)(a) and (1)(b)—those paragraphs do not constitute separate statutory provisions.

"'Statutory provision' is not defined as 'a section, subsection, or paragraph'; it instead means 'any provision defining a "single crime," whatever visual form the provision is given.'" *State v. White*, 346 Or 275, 280, 211 P3d 248 (2009) (quoting *State v. Kizer*, 308 Or 238, 243, 779 P2d 604 (1989)). Thus, whether two different sections, subsections, or paragraphs constitute separate statutory provisions for the purposes of ORS 161.067 depends on whether the legislature intended them to define a single crime that can be

---

[3] ORS 161.067 provides:

"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. * * *"

committed in more than one way, or two separate crimes. *White*, 346 Or at 280 ("[T]o determine whether an action violates two statutory provisions, we must determine whether the legislature intended to create two crimes or only one."). In other words, our task is to determine whether the legislature's actions were directed at a "broad, unitary risk or harm that could be triggered by any of several legally interchangeable means" or at "distinct and particularized risks or harms." *State v. Crawford*, 215 Or App 544, 554, 171 P3d 974 (2007), *rev den*, 344 Or 280 (2008). When determining whether the legislature intended a statute to define a single crime, we may consider the statute's structure, text, context, and legislative history. *See State v. White*, 341 Or 624, 640, 147 P3d 313 (2006) (using statutory text to determine whether legislature intended to define one or more crimes); *State v. Barrett*, 331 Or 27, 35-36, 10 P3d 901 (2000) (using statute's structure and context to determine same); *Kizer*, 308 Or at 242-43 (using legislative history); *Slatton*, 268 Or App at 569-73 (using text, context, and legislative history).

Here, the structure, text, and legislative history indicate that the different paragraphs of the witness tampering statute are directed at the same harm and define different ways of committing the same crime, not different crimes.

First, the structure of the witness tampering statute is some indication that the different paragraphs of that statute define different ways of committing a single crime. ORS 162.285(1) provides that "[a] person commits the crime of tampering with a witness if" the person engages in conduct described in either of two following paragraphs, (a) or (b). That structure—a section that names the crime, followed by paragraphs that define alternative ways of committing the crime—indicates that the legislature intended to define one crime. *See Barrett*, 331 Or at 35 ("[T]he use of a single section * * * is some indication that the legislature intended to define a single crime."); *State v. Beason*, 170 Or App 414, 430, 12 P3d 560 (2000) (the fact that offenses were included "in the same statutory section" suggested that "only a single crime was intended").

Second, the text of the statute indicates that the witness tampering statute was directed at a "broad, unitary risk or harm that could be triggered by any of several legally interchangeable means," as opposed to "distinct and particularized risks or harms." *Crawford*, 215 Or App at 554. Specifically, the text of the statute indicates that it was directed at broad harm: interference with the administration of justice. In *State v. Lykins*, 357 Or 145, 153, 348 P3d 231 (2015), the Supreme Court explained that

> "the harm that is the focus of the statutory wording is the risk that a witness in an official proceeding will offer false testimony or unlawfully withhold testimony. If a witness were to provide false testimony or withhold testimony, the resulting harm would be to the administration of justice and to the people of the state."

*See also id.* at 154 (the concern underlying the statute is "the protection of the administration of justice"). The legislature's broad focus suggests that, in enacting ORS 162.285(1)(a) and (b), the legislature was defining a single crime to protect against a general harm that could be triggered by alternative actions. Consequently, the two paragraphs are subparts of a definition of a single crime, not definitions of different crimes. *See White*, 341 Or at 640 (legislature intended to "provide two alternative ways to commit the crime of burglary," but did not intend for those alternative ways to constitute "separate 'statutory provisions'"); *Kizer*, 308 Or at 242-43 (separate paragraphs, which identified alternative ways of committing forgery, were not separate statutory provisions).

Third, and finally, the legislative history of the witness tampering statute leads to the same conclusion. As defendant recounts, when revising the criminal code, the legislature enacted three statutes concerning improper conduct involving witnesses: ORS 162.265, which prohibits bribing a witness; ORS 162.275, which prohibits a witness from receiving a bribe; and ORS 162.285, the statute at issue in this case, which prohibits tampering with a witness. Or Laws 1971, ch 743, §§ 201-203. The history of those statutes indicates that, although ORS 162.265 and ORS 162.275 were specifically directed at bribery, ORS 162.285 was

directed at all other forms of interference with witness testimony. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 203 (July 1970). As the drafters explained:

> "Section 203 [tampering with a witness] prohibits another form of improper conduct involving witnesses. Sections 201 [bribing a witness] and 202 [bribe receiving by a witness] are concerned with witness bribery, whereas Section 203 covers instances where a witness is induced by other means to testify falsely or disobey legal process."

*Id.* As defendant correctly argues, the fact that the legislature "criminalized various conduct influencing a witness by means other than bribery in a single statute rather than in a number of separate statutes such as it did with bribing a witness indicates that it viewed all means of influencing a witness other than bribery as merely different means of committing a single offense."

In sum, ORS 161.067(1) does not preclude merger of defendant's guilty verdicts, even though the verdicts are based on different paragraphs of the witness tampering statute, ORS 162.285(1)(a) and (b), because those paragraphs are not separate "statutory provisions" for the purposes of ORS 161.067(1). The structure, text, and legislative history of ORS 162.285 all lead to the conclusion that the legislature did not intend the paragraphs to define different crimes, but rather to describe different ways of committing a single crime, and, therefore, ORS 161.067(1) does not apply.

ORS 161.067(2), which precludes merger when the same conduct or criminal episode violates only one statutory provision, but involves two or more victims, does not apply in this case either. Although two of defendant's witness tampering counts involved his mother and the other two involved his brother, the counts do not involve separate victims, because the victim of witness tampering, if any, is the state. *Lykins*, 357 Or at 152-54. "A witness tampered with may be affected by the defendant's criminal conduct, but * * * that witness does not suffer harm that is an element of the criminal offense." *Id.* at 153. The harm targeted by the statute is harm "to the administration of justice and to the people of the state." *Id.* It "relates to the state, not to

an individual who might be affected by the defendant's conduct." *Id.* at 154. Consequently, although the witness tampering counts in this case involve two different witnesses, they do not involve two different victims, and, therefore, ORS 161.067(2) does not preclude merger.

Finally, ORS 161.067(3), which precludes merger when the same conduct or criminal episode involves repeated violations of a single statutory provision if the violations are separated from each other by "a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent," does not apply, given the facts of this particular case. All of the witness tampering counts were based on a single act: the sending of the letter. Because the verdicts on those counts were based on a single act, the violations were simultaneous; they were not separated by any pause. Therefore, ORS 161.067(3) does not apply.

In conclusion, because the four witness tampering counts in this case were based on a single act that violated a single statutory provision and involved a single victim, if any, ORS 161.067 does not preclude merger, and the trial court erred by failing to merge the guilty verdicts. *See White*, 341 Or at 637-38 (where none of the sections of ORS 161.067 applied, trial court erred in failing to merge guilty verdicts); *see also State v. Parkins*, 346 Or 333, 355, 211 P3d 262 (2009) (same).

Reversed and remanded for entry of a single conviction for tampering with a witness and for resentencing; otherwise affirmed.